STEVEN CALWAY *v.* DEBORAH CALWAY
(9869)

DUPONT, C. J., LAVERY and HEIMAN, Js.

Argued October 30, 1991—decision released February 25, 1992

*Anthony O. Famiglietti,* for the appellant (plaintiff).

*Carole L. Matteo,* with whom, on the brief, was *Arthur D. Machado,* for the appellee (defendant).

DUPONT, C. J. The marriage of the parties was dissolved by a judgment dated August 11, 1978. On December 6, 1990, the trial court found the plaintiff in contempt for failing to pay one half of the unreimbursed medical expenses of the parties' children. The court also modified the plaintiff's support obligations. The questions presented in this appeal are (1) whether the plaintiff, pursuant to General Statutes § 46b-37,[1] has a

[1] General Statutes § 46b-37 ([Rev. to 1977] § 46-10 at the time of dissolution) provides: "JOINT DUTY OF SPOUSES TO SUPPORT FAMILY. LIABILITY FOR PURCHASES AND CERTAIN EXPENSES. (a) Any purchase made by either a husband or wife in his or her own name shall be presumed in the absence of notice to the contrary, to be made by him or her as an individual and he or she shall be liable for the purchase.

"(b) Notwithstanding the provisions of subsection (a) of this section, it shall be the joint duty of each spouse to support his or her family, and both shall be liable for: (1) The reasonable and necessary services of a physician or dentist; (2) hospital expenses rendered the husband or wife or minor children while residing in the family of its parents; (3) the rental of any dwelling unit actually occupied by the husband and wife as a residence and reasonably necessary to them for that purpose; and (4) any article purchased by either which has in fact gone to the support of the family, or for the joint benefit of both; (5) the reasonable apparel of the wife; and (6) her reasonable support while abandoned by her husband.

"(c) No action may be maintained against either spouse under the provisions of this section, either during or after any period of separation from

continuing obligation after a dissolution of marriage to pay a portion of the cost of unreimbursed medical expenses of his minor children when the dissolution judgment is silent on the issue, (2) whether the trial court has the authority to hold the plaintiff in contempt for failing to abide by such an alleged obligation, and (3) whether the trial court properly modified the support obligations of the plaintiff. We reverse the decision of the trial court and remand for further proceedings.

The plaintiff and the defendant were married on November 11, 1972. They have two children, born in 1973 and 1975. At the time of dissolution, the plaintiff earned $640 per month as a member of the United States Air Force, and had secured medical insurance for the minor children through his employment; the defendant was unemployed but received $46.15 per week in welfare support for the children. Neither party owned or had an interest in any assets of substantial value.

The "care, custody and education of [the] minor children" were committed to the defendant, subject to the right of reasonable visitation by the plaintiff. Pursuant to General Statutes § 46b-84[2] ([Rev. to 1977] § 46-57

the other spouse, for any liability incurred by the other spouse during the separation, if, during the separation the spouse who is liable for support of the other spouse has provided the other spouse with reasonable support."

[2] General Statutes § 46b-84 provides in pertinent part: "PARENTS' OBLIGATION FOR MAINTENANCE OF MINOR CHILD. ORDER FOR HEALTH INSURANCE COVERAGE. (a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance.

"(b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

at the time of dissolution), the trial court determined the financial needs of the children and the respective abilities of the plaintiff and the defendant to fulfill those needs. The trial court ordered the plaintiff to pay $1 per year alimony, and $100 per month for the support of each of the minor children. The plaintiff was also ordered to "maintain medical insurance when available through employment for the benefit of the minor children." The judgment, however, was silent with respect to future medical expenses, not reimbursed by insurance, of the minor children.

The plaintiff remained in the Air Force until 1987 and provided, through his employment, health insurance coverage for the two minor children until June of that year. He did not maintain health insurance for the two children between June, 1987, and May, 1989, but did purchase another insurance policy for the children effective June 1, 1989, through May 31, 1990.

On October 2, 1990, the defendant filed two motions in the trial court. One motion sought a modification of the plaintiff's support obligations. It requested that his child support obligation be increased, that he be obligated to pay all unreimbursed medical expenses of the minor children, and that he be ordered to pay the defendant's attorney's fees related to the motion. The other motion sought to have the plaintiff held in contempt because he was six weeks behind in his child support payments,[3] because he had failed to maintain medical insurance for the minor children, and because he had failed to pay unreimbursed medical bills of the minor children that he allegedly had "agreed to pay."

In response to the motion for modification, both the plaintiff and the defendant submitted updated finan-

---

[3] This basis was subsequently withdrawn by the defendant because on the day of the modification hearing the plaintiff gave the defendant a check for all of the amounts then outstanding.

cial affidavits to the trial court. The defendant first submitted, on November 5, 1990, an affidavit that indicated that she was employed as a receptionist, and also earned money part-time doing daycare work. The November 5 affidavit showed a net weekly income of $205, total weekly expenses of $896.25, a total cash value of assets of $89,000 and total liabilities of $22,000. The defendant filed a second affidavit, dated November 26, 1990, in which she showed no weekly income because she had lost one job and would soon be losing the other. The plaintiff's financial affidavit, on the other hand, showed a total net weekly income of $175 from his solely owned business, and total weekly expenses of $1623.35, which included both business and personal expenses. The total cash value of his assets was shown as $56 and his total liabilities as $106,628. The plaintiff admitted, however, that his affidavit did not include approximately $40,000 in gross income his business had received and would receive between May and December, 1990. Testimony indicated that the plaintiff's average net weekly income was $622. Applied to that amount, the child support guidelines suggest a weekly child support payment of $291. The defendant requested an increase in child support payments to $200 per week. It was undisputed that between July, 1986, and November, 1990, the defendant incurred $2254.26 in medical expenses and $5320 in dental expenses for the two children, and that these expenses were not reimbursed by the plaintiff or paid by insurance funds.

After oral argument and the testimony of both the plaintiff and the defendant, the trial court issued its memorandum of decision, entitled "Rulings on Defendant's Motion for Contempt and Modification." The court "note[d]" that although the dissolution judgment ordered the plaintiff to maintain medical insurance for the minor children when available through his employer, the judgment "is silent on unreimbursed

medical expenses." The court found that "there is no adequate showing that the plaintiff failed to provide medical insurance coverage for the minor children when it was available through his employment," as was required by the dissolution judgment.

The court concluded, despite the silence of the judgment itself, that both parents are liable for the medical expenses of their minor children under General Statutes § 46b-37 (b). The court held, therefore, that the plaintiff is liable equally with the defendant for the medical expenses of the minor children. It ordered the plaintiff to pay "one half of the $2254.26 paid by the defendant for past medical expenses, as well as payment of one half of any outstanding medical bills for the children. Further, the defendant is ordered to pay one half of past dental bills amounting to $5320 and outstanding bills for services to the children." On the basis of its findings, the trial court also held the plaintiff in contempt for "failing to pay one half of the unreimbursed medical expenses, [and, to] purge himself of that contempt, the plaintiff is to pay one half of those expenses at the rate of $50 per week until they are fully paid." Finally, the trial court found a substantial change in the circumstances of the parties, and therefore modified the plaintiff's child support obligation from $200 per month to $200 per week. The court, however, did not make any determination as to the responsibility of either party for the payment of future medical or dental expenses of the minor children unreimbursed by insurance.

I

The plaintiff first challenges the trial court's finding that he was in civil contempt for failing to pay one half of the unreimbursed medical and dental expenses of his minor children. "Because this is an appeal from a judgment of civil contempt, our review is technically

limited to 'questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt.' " *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731, 444 A.2d 196 (1982). A civil contempt may be "improper or erroneous because: the injunction on which it was based was vague and indefinite; *Baldwin* v. *Miles,* [58 Conn. 496, 498, 20 A. 618 (1890)]; the findings on which it was based were ambiguous and irreconcilable; *Leslie* v. *Leslie,* [174 Conn. 399, 404, 389 A.2d 747 (1978)]; the contemnor's constitutional rights were not properly safeguarded; *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 87, 376 A.2d 1080 (1977); the penalties imposed were criminal rather than civil in nature; *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 355–56, 321 A.2d 462 (1973); and the contemnor, through no fault of his own, was unable to obey the court's order. *Tobey* v. *Tobey,* [165 Conn. 742, 746, 345 A.2d 21 (1974)]." *Papa* v. *New Haven Federation of Teachers,* supra, 732.

"Although *Papa* recognizes that plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." *Dunham* v. *Dunham,* 217 Conn. 24, 29–30, 584 A.2d 445 (1991).

The authority of a court to find a party in contempt is founded in the court's need to have the ability to coerce compliance with its orders. *Tufano* v. *Tufano,* 18 Conn. App. 119, 125, 556 A.2d 1036 (1989). "The inability of a contemnor to obey a court order through no fault of [his] own is a defense to a claim of contempt. . . . In other words, the act for which the penalty was imposed cannot constitute contempt if the

actor was unable to obey the order." (Citations omitted.) *Tatro* v. *Tatro*, 24 Conn. App. 180, 186, 587 A.2d 154 (1991). The underlying assumption of such analysis is that a prior order exists on which to base a finding of contempt. Thus, if no prior court order exists, an actor cannot obey it, and, therefore, the trial court cannot hold the actor in contempt for noncompliance with a nonexisting order.

In the present case, at the time the trial court found the plaintiff in contempt for failing to pay the unreimbursed medical expenses of his minor children, there did not then exist a trial court order directing him to do so. The trial court's own memorandum of decision notes that the dissolution order "is silent on unreimbursed medical expenses." The judgment obligated the plaintiff to maintain medical insurance for the minor children when available through his employment, to pay the defendant $100 per month per child as child support, and $1 per year as alimony. Since no order then existed that required the plaintiff to pay one half of the children's unreimbursed medical expenses, he cannot be held in contempt for his failure to do so.

The trial court determined that, pursuant to General Statutes § 46b-37 (b), the plaintiff was jointly liable with his former wife for the medical expenses of the minor children. On appeal, the defendant asks us to affirm the trial court's decision on this basis. A threshold issue not addressed by the parties, however, is whether the joint statutory liability of spouses for the medical and dental expenses of the minor children as described in General Statutes § 46b-37 (b) survives a dissolution of the marriage and the concomitant determination, pursuant to General Statutes § 46b-84, of the future support obligations of the parents.

General Statutes § 46b-37 is contained within Chapter 815e of the General Statutes, which governs the

validity of marriages and the rights and obligations of spouses during marriage. General Statutes § 46b-37 (b) provides in pertinent part that "it shall be the joint duty of each spouse to support his or her family, and both shall be liable for: (1) The reasonable and necessary services of a physician or dentist; (2) hospital expenses rendered the husband or wife or minor child while residing in the family of its parents . . . ."[4]

General Statutes § 46b-84, on the other hand, is contained within Chapter 815j, which governs the dissolution of marriages in Connecticut. Part III of that chapter, in which § 46b-84 is found, contains provisions for the division of property and for the support of children and spouses in dissolution actions. Section 46b-84 (a) provides: "(a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance." Subsection (b) of that section then sets forth the criteria by which the court should determine both the child's need for maintenance and the parents' ability to provide such maintenance.[5]

To extend the spousal obligations of § 46b-37 (b) beyond dissolution would have the impermissible consequences of undermining the statutory scheme of marital rights and obligations on one hand, and dissolution rights and obligations on the other. Section 46b-37 (b) identifies the obligations of spouses during marriage, including the obligation of payment of the medical expenses of the minor children. The plain language of § 46b-37 (b), including the use of the terms "spouse," "husband" and "wife," indicates that the obligations contained therein apply only to predissolution relation-

[4] See footnote 1, supra.
[5] See footnote 2, supra.

ships. The language of § 46b-84, by contrast, indicates that, upon the dissolution of a marriage, the trial court is to determine the future obligations of the parents concerning the maintenance of the children.

Additionally, § 46b-37 (c) provides that a spouse is not responsible for any liability incurred by the other spouse during or after separation as long as the spouse liable for support of the other spouse has provided the other spouse with reasonable support. This responsibility can exist only until pendente lite orders grant "reasonable support" or until a dissolution judgment, pursuant to General Statutes §§ 46b-82 and 46b-84, determines the appropriate amount for "reasonable support." In other words, the liability under one statute, § 46b- 37, ends when the liability under another, § 46b-84, begins.

"In attempting to reconcile ambiguous or potentially duplicative statutes, we make every attempt to construe a statutory scheme as a whole." *Roach* v. *Roach,* 20 Conn. App. 500, 512, 568 A.2d 1037 (1990). In *Roach,* we refused to allow a party to pursue alimony under both §§ 46b-82 and 46b-85. Our interpretation of those statutes eliminated "any confusion or duplication between the statutes and comports with the apparent intent of the legislature." Id., 513. If the obligations of § 46b-37 (b) extend beyond dissolution, then we similarly are confronted with duplicity problems regarding the postdissolution support obligations of the parents. Absent a clear legislative intent to so extend § 46b-37 (b), we decline to do so.

The scope of § 46b-37 (b) is limited to, among other items, medical expenses of the minor children incurred prior to the dissolution of the parents' marriage. The plaintiff and the defendant were divorced in 1978, and therefore their statutory obligations under § 46b-37 terminated at that time. The future obligations of the par-

ties were determined by the dissolution court, pursuant to the requirements of § 46b-84. The trial court hearing the defendant's modification and contempt motions, therefore, improperly concluded that the plaintiff had a continuing joint obligation with the defendant to pay one half of the medical and dental bills of the minor children incurred after dissolution and prior to any modification of the dissolution judgment. Since the dissolution judgment is silent regarding these expenses, and no agreement between the parties with respect to this agreement was incorporated into the original judgment, the plaintiff does not have an obligation under either § 46b-37 (b) or the dissolution judgment to pay one half of medical and dental expenses.

Even if the trial court correctly determined that the obligations of § 46b-37 (b) extended beyond dissolution of the marriage, the plaintiff could not be held in contempt for his failure to comply with those obligations. First, the court's authority to issue contempt orders is limited to noncompliance with court rules, orders, judgments or mandates, but not statutes. *Ferrie* v. *Trentini,* 111 Conn. 243, 252, 149 A. 664 (1930). There was no previous court order obligating the plaintiff in this case to share in the cost of the unreimbursed medical bills of the minor children. Second, as previously discussed, a person cannot be held in contempt for failure to fulfill an obligation of which he could not be aware. See *Tatro* v. *Tatro,* supra. The plaintiff was not able to fulfill the obligations of § 46b-37 (b) because he did not know that they applied to him until the trial court held him in contempt for failing to meet those obligations.

## II

The defendant's motion for modification requested, in part, that the defendant "pay all unreimbursed medical expenses of the minor children." This language,

in the context of a motion for modification, can reasonably be interpreted as requesting that the judgment be modified so as to obligate the plaintiff to pay the future unreimbursed medical expenses of the minor children. The trial court's action with respect to the unreimbursed medical expenses dealt only with past bills. It was not intended to be, however, nor could it be, a retroactive modification of the original dissolution judgment. "General Statutes § 46b-86 has been construed as not authorizing such a retroactive modification." *Paddock* v. *Paddock,* 22 Conn. App. 367, 373, 577 A.2d 1087 (1990).[6] Because the trial court improperly determined that the plaintiff had an obligation under § 46b-37 to pay one half of the cost of the unreimbursed medical expenses, the court did not act on the defendant's motion to modify the judgment with respect to future unreimbursed medical expenses.

"The issues involving financial orders are entirely interwoven. 'The rendering of a judgment in a complicated dissolution [or subsequent modification] case is a carefully crafted mosaic, each element of which may be dependent on the other.' *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984)." *Sunbury* v. *Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989). Having concluded that the trial court failed to act on one portion of the defendant's motion to modify the financial orders, we conclude that we are required to reverse all of the financial orders that were made by the trial court and remand the matter for a new trial

---

[6] Similarly, General Statutes § 46b-215 (e) expressly provides in pertinent part that "[n]o such support orders [issued pursuant to § 46b-215] may be subject to retroactive modification, except that the court or family support magistrate may order modification with respect to any period during which there is a pending motion for modification of an existing support order from the date of service of the notice of such pending motion upon the opposing party pursuant to section 52-50."

so that the court may review all financial issues.[7] See *Trella* v. *Trella,* 24 Conn. App. 219, 223, 587 A.2d 162 (1991). We do so, even though it appears that, on the basis of the financial affidavits, the trial court was well within its discretion in awarding the amount of child support it did.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for contempt and for further proceedings on the defendant's motion for modification.

In this opinion the other judges concurred.

---

[7] We note that the trial court found that the medical expenses for the children incurred by the defendant "would have been paid by the plaintiff's insurance carrier if they had been submitted by him or if he had permitted the defendant to submit these medical bills to the medical carrier." The trial court failed to determine, however, which bills the plaintiff did not submit and or which bills the plaintiff did not permit the defendant to submit. It also failed to determine which bills the defendant incurred while the plaintiff maintained coverage for the minor children and which bills the defendant incurred while the plaintiff did not maintain coverage.